UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

ANTHONY REED,

    Petitioner

v.

BRIAN WILLIAMS, SR., *et al.*,

    Respondents

2:14-cv-00027-JAD-CWH

**Order Denying Petition for Writ of Habeas Corpus [ECF 7]**

*Pro se* inmate Anthony Reed brings this habeas-corpus action to challenge his four Nevada state-court convictions for robbery and related charges following a jury trial.[1] Reed claims that he is entitled to federal habeas relief based on insufficient evidence, prosecutorial misconduct, and ineffective assistance of counsel.[2] Because Reed has failed to show that any state-court decision affirming his conviction or rejecting his habeas claims is contrary to, or involved an unreasonable application of, clearly established federal law, or that his conviction was based on an unreasonable determination of the facts in light of the evidence presented at trial, I deny Reed's petition. Although I find that an appeal from the bulk of this ruling would be in bad faith, I grant Reed a narrowly-drawn certificate of appealability on a portion of his ineffective-assistance-of-counsel claim.

**Background**

In August 2011, a state-court jury convicted Reed of conspiracy to commit robbery, burglary while in possession of a deadly weapon, attempted murder with use of a deadly weapon, and battery with use of a deadly weapon resulting in substantial bodily harm.[3] Reed appealed his conviction,[4]

---

[1] ECF 7.

[2] ECF 7 at 7–28.

[3] ECF 15-7. The jury also found Reed guilty of robbery with use of a deadly weapon and grand larceny but the trial court dismissed those counts.

[4] ECF 15-8.

and the Nevada Supreme Court affirmed.[5]

In July 2012, Reed filed a habeas petition in state district court.[6] The state district court denied his petition.[7] Reed appealed that denial to the Nevada Supreme Court[8]; the Nevada Supreme Court affirmed.[9] Reed now seeks federal habeas relief.[10]

Reed argues that he is entitled to federal habeas relief because (1) the trial court improperly allowed the state to ask leading questions on direct examination, (2) there is insufficient evidence to support his convictions, (3) the prosecutor committed misconduct in several respects during trial, and (4) Reed's counsel was ineffective.[11] Reed has not shown that he is entitled to relief under any of these theories. Accordingly, I deny his petition.

**Discussion**

**A.    28 U.S.C. § 2254(d)**

A federal court may not grant an application for a writ of habeas corpus on behalf of a person in state custody on any claim that was adjudicated on the merits in state court unless the state court decision (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by United States Supreme Court precedent or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state-court proceeding.[12] In making this determination, federal habeas courts look to the last reasoned state court decision.[13]

---

[5] ECF 16-2.

[6] ECF 16-8.

[7] ECF 16-19.

[8] ECF 16-14.

[9] ECF 16-26.

[10] ECF 1.

[11] ECF 7 at 7–28.

[12] 28 USC § 2554(d).

[13] *Smith v. Hedgpeth*, 706 F.3d 1099, 1102 (9th Cir. 2013), *cert. denied* 133 S.Ct. 1831 (2013).

"Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground."[14] To the extent no reasoned opinion exists, courts must independently review the record to determine whether the state court clearly erred in its application of controlling federal law or whether the state court's decision was objectively unreasonable.[15]

### B.     Claim One: Leading Questions on Direct Exam

Reed claims that his federal constitutional rights were violated because the prosecutor asked Anthony Harris—the victim and main government witness—leading questions on both direct and redirect examination.[16] The Nevada Supreme Court rejected this argument:

> The district court [ ] sustained Reed's sole objection to a leading question during the victim's direct examination. Reed failed to object to any subsequent leading questions during either the victim's direct or redirect examination and, on appeal, cannot demonstrate that the prosecutor's conduct substantially affected the jury's verdict or "so infected the trial with unfairness as to make the resulting conviction a denial of due process."[17]

Prosecutorial misconduct is grounds for federal habeas relief only when the alleged misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process."[18] Though Reed contends that the state court improperly allowed the prosecutor to ask Harris leading questions, the record reveals that the court sustained Reed's sole objection to a leading question during Harris's direct examination. And Reed points to no specific leading questions and resultant answers that prejudiced him at trial.[19] As a practical matter, when objected

---

[14] *Yist v. Nunnemaker*, 501 U.S. 797, 803 (1991).

[15] *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000).

[16] ECF 7 at 3–4.

[17] Citing *Valdez v. State*, 196 P.3d 465, 477 (Nev. 2008). ECF 16-2 at 3.

[18] *Darden v. Wainwright*, 477 U.S. 168, 171 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)); *see also United States v. Johnson*, 767 F.3d 815, 824 (9th Cir.2014) (applying *Darden* in context of alleged improper leading questioning).

[19] *Darden*, 477 U.S. at 171 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

to, leading questions are often re-phrased to elicit the same information from the witness. Reed has not shown that the prosecutor elicited any significant information from Harris using leading questions that could not have been obtained with non-leading questions. Reed's lawyer also thoroughly cross-examined Harris, and there is no showing that the prosecutor's leading questioning caused any inaccuracies in Harris's testimony that were not corrected on cross.

In short, Reed has not shown that any leading questions asked by the prosecutor "so infected [his] trial with unfairness as to make the resulting conviction a denial of due process."[20] The state court's denial of Reed's petition on this ground is not contrary to, or an unreasonable application of, clearly established federal law, nor is it based on an unreasonable determination of the facts in light of the evidence presented.[21] Therefore, I decline to grant Reed habeas relief on Claim One.

## C.   Claim Two: Sufficiency of the Evidence

Reed next claims that his conviction is unconstitutional because there was insufficient evidence at trial to support his conviction.[22] In rejecting Reed's sufficiency-of-the-evidence challenge, the Nevada Supreme Court summed up the evidence at trial:

> Trial testimony indicated that the victim, Anthony Harris, was sitting in his car waiting to sell marijuana when two individuals possessing firearms entered the vehicle at the same time from the passenger side of the vehicle and threatened to shoot Harris; the individual in the front passenger seat pointed his gun at Harris and demanded that he turn over his watch, wallet, and the marijuana. The other individual sat in the back. Harris attempted to flee but was shot from behind, approximately five feet from the vehicle. Harris' vehicle was stolen from the scene and located the following day; Reed's fingerprints were found outside the driver's side door. Harris was unable to state which individual was the shooter. Although his testimony was equivocal, Harris did identify Reed, at both the preliminary hearing and trial, as one of the two individuals involved in the incident. The firearm used to shoot Harris was later found in Reed's possession.[23]

---

[20] *Darden*, 477 U.S. at 181.

[21] *See* 28 U.S.C. § 2254(d).

[22] ECF 7 at 6–7.

[23] ECF 16-2 at 1–2.

Noting that "[c]ircumstantial evidence alone may sustain a conviction,"[24] the court found that there was sufficient evidence to support the jury's verdict and declined to overturn Reed's convictions on that basis.[25]

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."[26] A reviewing court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[27] If so, there is no due process violation; a due process violation occurs only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt.[28]

The evidence presented at Reed's trial was more than sufficient to support the jury's verdict. First, Harris identified Reed as one of the two men who, acting together, entered his vehicle, pointed guns at him, robbed him, and shot him.[29] Detectives then testified that Harris's vehicle was found early the next morning a few blocks from where the robbery and shooting took place[30] and that Reed's fingerprints were found on the driver's-side door.[31] Finally, a firearms examiner testified that the gun found in Reed's car matched the bullet recovered from Harris's back during surgery.[32]

Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact

---

[24] *Id.* at 2 (*citing Buchanan v. State*, 69 P.3d 694, 705 (Nev. 2003)).

[25] On direct appeal, the Nevada Supreme Court also rejected Reed's prosecutorial-misconduct and abuse-of-discretion-at-sentencing arguments.

[26] *In re Winship*, 397 U.S. 358, 364 (1970).

[27] *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).

[28] *Jackson*, 443 U.S. at 324; *see also Payne v. Borg*, 982 F.2d 335, 338 (9th Cir. 1992), *cert. denied*, 510 U.S. 843 (1993).

[29] ECF 14-12 at 6–10, 43–44.

[30] *Id.* at 112–14; ECF 14-13 at 196–202.

[31] ECF 14-13 at 150–53.

[32] ECF 14-14 at 64–72.

could have easily found the essential elements of Reed's charged crimes beyond a reasonable doubt. The state court's denial of this claim was not contrary to, nor an unreasonable application of, clearly established federal law, nor was its denial based on an unreasonable determination of the facts in light of the evidence presented.[33]  For these reasons, I also reject Reed's sufficiency-of-the-evidence challenge.

**D.     Claim Three: Prosecutorial Misconduct**

Reed contends that the prosecutors committed misconduct at trial by alluding to facts not in evidence, offering improper opinion evidence, misstating the law, and disparaging Reed and defense counsel.[34] Because Reed did not raise these objections at trial, the Nevada Supreme Court reviewed these claims for plain error on direct appeal and concluded that Reed failed to demonstrate reversible plain error.[35]

"Review for prosecutorial misconduct claims on a writ of habeas corpus is 'the narrow one of due process, and not the broad exercise of supervisory power.'"[36] To show prosecutorial misconduct, "it is not enough that the prosecutors' remarks were undesirable or even universally condemned;" the petitioner must show that the prosecutorial misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process."[37] Courts measure the fairness of a petitioner's trial by considering, among other things, (1) whether the prosecutor's comments manipulated or misstated the evidence, (2) whether the trial court gave a curative instruction, and (3) the weight of the evidence against the accused.[38] Where a curative instruction is

---

[33] *See* 28 U.S.C. § 2254(d).

[34] ECF 7 at 9–21.

[35] ECF 16-2 at 2–3.

[36] *Jones v. Ryan*, 691 F.3d 1093, 1102 (9th Cir. 2012) (quoting *Darden*, 477 U.S. at 181).

[37] *Darden*, 477 U.S. at 181 (internal quotation marks omitted).

[38] *Tan v. Runnels*, 413 F.3d 1101, 1115 (9th Cir. 2005) (citing *Darden*, 477 U.S. at 181-82).

given, jurors are presumed to "follow the instruction absent extraordinary situations."[39]

Reed first argues that the prosecutor asked improper questions during Reed's cross-examination:

> Q. Okay. In that time did you know someone by the name of Sally Gaddes (phonetic)?
>
> A. No, Ma'am.
>
> Q. What about Rachel Adams (phonetic)?
>
> A. No, Ma'am.
>
> Q. So you don't know anybody who owns a silver Mercedes?
>
> A. No, Ma'am.
>
> Q. Would it surprise you if somebody said the opposite?
>
> A. No, Ma'am.[40]

It was not improper for the prosecutor to ask Reed if he knew certain people, or if he knew anyone who owned a particular vehicle. Nor was it misconduct to ask Reed if he would be surprised if someone contradicted his testimony. And there is no indication that the prosecutor improperly referred to facts not in evidence—like a connection between Reed and a silver Mercedes—in her closing arguments.

Next, Reed argues that the prosecutor improperly stated her own personal opinions during closing argument:[41]

> So, since there is no actual doubt that this gun shot this bullet, the bullet that was taken from Anthony Harris's body, the defendant gave us a story where he said oh, he bought this gun, it must have been right after what happened.
>
> But that is way too convenient and not logical. So some guy is just going to approach another guy and start asking if he wants to make an illegal purchase? Usually people who want to sell something illegally at least want to know that who they're dealing with isn't an undercover cop. They don't generally go up to random people, and you can use

---

[39] *Id.* (citing *Francis v. Franklin*, 471 U.S. 307, 324 n.9 (1985)).

[40] ECF 14-14 at 97; ECF 7 at 9–11.

[41] ECF 7 at 12–13.

your commonsense to determine that.[42]

This argument was not improper; it was fair commentary on Reed's testimony. It was not stated as a matter of the prosecutor's personal opinion, and the prosecutor told the jury that it was a matter of common sense. A prosecutor may argue reasonable inferences drawn from the evidence.[43]

Reed also complains that the prosecutor improperly opined on the credibility of Anthony Harris's testimony during her rebuttal closing argument:

> Well, ladies and gentlemen, I see many witnesses and many victims and many different types of crimes, and I can tell you no one ever is a perfect witness, because everybody's different.[44]

Though it was arguably improper for the prosecutor to base this comment on her personal experience, the gist of the comment—that there is no perfect witness—is not improper. Any impropriety was *de minimus* and did not render Reed's trial unfair, especially in light of the strong evidence of Reed's guilt, e.g., Reed's fingerprints on Harris's car, the gun recovered from Reed's car, and Harris's testimony.

Reed additionally argues that the prosecutor misstated the evidence during closing argument by stating that there was no eyewitness identification and asking the jury to rely on circumstantial evidence.[45] It was fair for the prosecutor to ask the jury to rely on circumstantial evidence. This argument did not misstate the evidence, nor did it render Reed's trial unfair. If anything, this argument understated the evidence against Reed because Harris did positively identify Reed as one of his assailants during trial, though he was unsure whether Reed was the one who pulled the trigger.

Reed also argues that the prosecutor improperly disparaged him and his defense during cross examination:

> Q. Sir, now, you just answered questions by your defense

---

[42] ECF 14-16 at 9–10.

[43] *See United States v. Weatherspoon*, 410 F.3d 1142, 1147 (9th Cir. 2005) (recognizing that "prosecutors must have reasonable latitude to fashion closing arguments, and thus can argue reasonable inferences based on the evidence . . .") (internal citation and quotation omitted).

[44] *Id*. at 63.

[45] ECF 7 at 13–16; ECF 14-16 at 12.

| | | |
|---|---|---|
| 1 | | attorney. |
| 2 | A. | Yes. |
| 3 | Q. | And you listened to his questions? |
| 4 | A. | Yes. |
| 5 | Q. | And you answered his questions nicely? |
| 6 | A. | Yes, ma'am. |
| 7 | Q. | Okay. Would you be kind enough to do the same for me when I ask you questions? |
| 8 | | |
| 9 | A. | Sure. |
| 10 | Q. | Thank you. Is it fair to say this is an important case to you? |
| 11 | A. | Very important? |
| 12 | Q. | you have a lot at stake? |
| 13 | A. | Yes, ma'am. |
| 14 | Q. | Really, no nobody else does, it's you; fair to say? |
| 15 | A. | I don't understand your question. |
| 16 | Q. | Well, you're the one on trial? |
| 17 | A. | Yes. |
| 18 | Q. | And as your defense counsel pointed out, you've sat through the entire trial? |
| 19 | | |
| 20 | A. | Yes, ma'am. |
| 21 | Q. | You also sat through a previous preliminary hearing? |
| 22 | A. | Yes, ma'am. |
| 23 | Q. | And you've had the opportunity to listen to all the witnesses? |
| 24 | A. | Yes, ma'am. |
| 25 | Q. | And you've had the opportunity to read all the police reports? |
| 26 | A. | Yes, ma'am. |
| 27 | Q. | Okay. So you know the facts of the case? |
| 28 | | |

        A.    Yes, ma'am.[46]

This questioning was plainly proper. It was not improper for the prosecutor to ask Reed if he would answer her questions nicely. It was also not improper for the prosecutor to ask questions to establish that Reed was very familiar with his case in order to imply that he had an opportunity to fabricate a defense.

      Reed next complains that, during closing argument, the prosecutor improperly referred to a portion of Reed's testimony as "a story": "[T]he defendant gave us a story where he said oh, he bought this gun, it must have been just right after what happened."[47] He also claims that the prosecutor unfairly characterized aspects of his defense as "distractions."[48] These arguments were not improper; they did not misstate or manipulate the evidence, nor did they render Reed's trial unfair. Again, a prosecutor is allowed to argue reasonable inferences drawn from the evidence.[49]

      Finally, Reed claims that the prosecutor misstated the law during closing argument by (1) stating that it did not matter whether Reed pulled the trigger and by (2) misstating the reasonable-doubt standard.[50] The prosecutor's arguments were not misstatements of the law, and, in any event, the written jury instructions correctly explained the law to the jury.[51] Where a curative instruction is

---

[46] ECF 14-14 at 95–97; ECF 7 at 18–20.

[47] ECF 7 at 18; ECF 14-16 at 9–10.

[48] *See* ECF 7 at 18–20.

[49] *See United States v. Weatherspoon*, 410 F.3d 1142, 1147 (9th Cir. 2005) (recognizing that "prosecutors must have reasonable latitude to fashion closing arguments, and thus can argue reasonable inferences based on the evidence . . .") (internal citation and quotation omitted).

[50] *See* ECF 7 at 20–21.

[51] ECF 14-15 at 8:
    The Defendant is presumed innocent until the contrary is proved. This presumption places upon the State the burden of proving beyond a reasonable doubt each and every material element of each and every crime charged and that the Defendant is the person who committed each and every offense.
The prosecutor's statement that Reed need not be the one who pulled the trigger to be liable for the shooting is a correct statement of the law of conspirator liability and the jury instructions properly explained this concept to the jury. ECF 14-15 at 15.

given, jurors are presumed to "follow the instruction absent extraordinary situations."[52]

In sum, Reed has not shown any prosecutorial misconduct. And, to the extent that any of the complained-of actions by the prosecutor were improper, Reed's trial was not so infected with unfairness to cause a due-process violation. This is especially true in light of the strength of the evidence of Reed's guilt and the relatively limited nature of these allegedly improper arguments. The state court's denial of Reed's petition on the basis of prosecutorial misconduct was not contrary to, or an unreasonable application of, clearly established federal law, nor was the state court's ruling on this issue based on an unreasonable determination of the facts in light of the evidence presented. I therefore decline to grant Reed's petition on Claim Three.

### E. Claim Four: Ineffective Assistance of Counsel

Reed argues that he is entitled to federal habeas relief because he received ineffective assistance of counsel at trial. Reed claims his counsel was ineffective for (1) failing to properly address juror misconduct,[53] (2) failing to file pre-trial motions to exclude evidence,[54] and (3) "failing to investigate facts, witnesses and evidence of [Reed's] testimony regarding the gun."[55]

In *Strickland v. Washington*, the United States Supreme Court established a two-prong test for ineffective-assistance-of-counsel claims. A petitioner must show that (1) the defense attorney's representation "fell below an objective standard of reasonableness," and (2) the attorney's deficient performance prejudiced the defendant so severely that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[56] A court may first consider either the question of deficient performance or the question of prejudice; if the

---

[52] *Id*. (citing *Francis*, 471 U.S. at 324 n. 9).

[53] ECF 7 at 23.

[54] *Id.* at 26–27.

[55] *Id.* at 28.

[56] *Strickland v. Washington*, 466 U.S. 668, 694 (1984).

petitioner fails to satisfy one prong, the court need not consider the other.[57]  But where a state court has adjudicated a claim of ineffective assistance of counsel, federal habeas courts ask only "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."[58]

### 1. Failure to Challenge Juror Misconduct

Reed first claims that he received ineffective assistance of counsel because his lawyer failed to properly address juror misconduct.[59]  The Nevada Supreme Court rejected this claim: "[Reed] failed to demonstrate that counsel was deficient or that he was prejudiced.  [He also] failed to demonstrate that there was misconduct by the juror or how counsel's failure to address the juror's conduct may have affected the outcome at trial."[60]

Reed claims that a juror committed misconduct by failing to disclose that she attended the wedding of Deputy District Attorney David Roger to Susan Pate, one of the prosecutors who tried the case.  Pate disclosed that information to the trial court in a hearing outside the presence of the jury.[61]  She stated that it was the only time she had ever met the juror and that they had no relationship.  She also indicated that the juror likely did not remember them meeting.[62]  Later, the judge received a note from the juror that read:

> Dear Judge Vega.  I think a gentleman named Dave Roger came in the courtroom.  If it is him, I do know him through my boyfriend . . . .  They are very good friends.  I wanted to make sure you are aware in case he is a witness, so I do not put this case or myself in a negative position.  If that is not him, I apologize for the disruption.

\* \* \*

---

[57] *See Strickland*, 466 U.S. at 697.

[58] *Richter*, 562 U.S. at 105; *see also Cheney v. Washington*, 614 F.3d 987, 994-95 (9th Cir. 2010) (acknowledging double deference required for state court adjudications of *Strickland* claims).

[59] ECF 7 at 23.

[60] ECF 16-26 at 2–3.

[61] ECF 14-11 at 43–44.

[62] *See id*.

     P.S. The gentleman has left. May not be him.[63]

The trial judge noted that Roger had been in the courtroom during opening statements.[64] The prosecutor asked the judge to inform the juror that David Roger was not a witness, and the court did so.[65]

  I agree with the Nevada Supreme Court that Reed's lawyer was not constitutionally deficient for failing to challenge the juror's alleged misconduct. There was not any showing that the juror had a relationship with Roger that would prejudice her against the defense. And there was no indication that the juror recognized Pate, the prosecutor who tried the case. Because there is no evidence suggesting that the juror committed any misconduct, or that she was not impartial, Reed's lawyer had no grounds to claim juror misconduct and was not ineffective for failing to do so, and Reed was not prejudiced. The state court's denial of Reed's ineffective-assistance-of-counsel claim for failing to object to juror misconduct was not contrary to, or an unreasonable application of, clearly established federal law, nor was the state court's ruling based on an unreasonable determination of the facts in light of the evidence presented. Reed is not entitled to federal habeas relief on this basis.

  **2.**  **Failure to File Pre-trial Motions**

  Reed next argues that his lawyer was ineffective for failing to file pre-trial motions to exclude evidence seized during a traffic stop on April 10, 2008.[66] The state district court rejected this claim:

> [Reed's] trial counsel was not ineffective for allegedly failing to file a Motion to Suppress the fruits of the traffic stop search since inventory searches are permitted when a vehicle is impounded and there is no objection to the evidence that Defendant's counsel could have made. As such, any such objection would have been futile.[67]

So did the Nevada Supreme Court:

> [Reed] failed to demonstrate that counsel was deficient or that he was

---

[63] *See id.* at 129–30.

[64] *See id.* at 130.

[65] *Id.*

[66] ECF 7 at 26–27.

[67] ECF 16-19 at 5.

> prejudiced. In regard to the traffic stop, [Reed] failed to allege any facts that, if true, would have entitled him to relief.[68] Further, according to the testimony provided at trial, [Reed's] statements regarding his ownership of the gun were spontaneous and not made pursuant to interrogation by the police. Therefore, there was no *Miranda* violation, and counsel was not deficient for failing to file a futile motion.[69]

I agree with the analyses and conclusions of the state courts. Reed makes no showing that there was any basis to challenge the April 10, 2008, traffic stop or the search performed incident to that stop. Nor does Reed make any showing that the statements he made to the police regarding his ownership of the gun were not spontaneous. Because there was no basis for Reed's attorney to challenge the evidence that resulted from the traffic stop, his lawyer's performance was not deficient and Reed was not prejudiced. The state courts applied the correct law, and these rulings were not based on an unreasonable determination of the facts in light of the evidence presented. Therefore, Reed is not entitled to federal habeas relief for his lawyer's failure to file a pre-trial motion challenging this evidence.

### 3. Failure to Investigate

Finally, Reed contends that his lawyer was ineffective for "fail[ing] to investigate facts, witnesses and evidence of petitioner's testimony regarding the gun."[70] Reed claims that he purchased the firearm that was linked to the robbery by a man in front of a Blockbuster video-rental store after the robbery occurred.[71] Reed also claims that he told his lawyer that his girlfriend knew that he had "purchased the gun at the Blockbuster store along with [a PlayStation and an MP3 player]."[72] Reed argues that his lawyer was deficient for failing to investigate his defense by attempting to secure the video surveillance from the store or by interviewing Reed's girlfriend,

---

[68] *Hargrove v. State*, 686 P.2d 222, 225 (Nev. 1984).

[69] *Donovan v. State*, 584 P.2d 708, 711 (Nev. 1978). ECF 16-26 at 3–4.

[70] ECF 7 at 28.

[71] *Id.*

[72] *Id.*

which prejudiced him before the jury.[73]

The Nevada Supreme Court affirmed the state district court's denial of Reed's habeas petition on this point:

> [Reed] failed to demonstrate that he was prejudiced because he failed to demonstrate that there was a reasonable probability of a different outcome at trial had his trial counsel presented [his] fiancée's testimony or tried to obtain the security footage. According to [Reed], his fiancée was not present when he supposedly purchased the gun and other items and would only have been able to testify that [Reed] brought home the PlayStation and MP3 player. This testimony would not have added much to [Reed's] story regarding purchasing the gun . . . . As for the security footage, [Reed] failed to demonstrate that it showed the parking lot of the Blockbuster Video and that the footage still existed at the time that [he] was arrested, which was a month after the crime was committed. Therefore, the district court did not err in denying this claim.[74]

I agree with the Nevada Supreme Court's analysis. In essence, Reed faults his lawyer for failing to gather evidence to corroborate his story that he bought the gun after the shooting from a stranger in a Blockbuster parking lot. But Reed has not shown that any corroborating evidence ever existed. As the Nevada Supreme Court pointed out, Reed never claimed that his girlfriend was present when he purchased the gun or that she ever saw it. Her testimony that Reed came home with a PlayStation and MP3 player that he had purchased at Blockbuster would have added little to his defense. Because Reed has not shown that his counsel was constitutionally deficient and the Nevada Supreme Court correctly applied *Strickland* in ruling on Reed's ineffective-assistance-of-counsel claim for failure to investigate, I decline to grant Reed's petition on this basis.

**F.     Certificate of Appealability**

A petitioner may not appeal the denial of a habeas petition unless the district court issues a certificate of appealability identifying the particular issues that may be pursued on appeal.[75] To

---

[73] *Id.*

[74] ECF 16-26 at 4–5.

[75] 28 U.S.C. §2253(c); *United States v. Asrar*, 116 F.3d 1268 (9th Cir. 1997).

obtain a certificate of appealability, the petitioner must "make a substantial showing of the denial of a constitutional right,"[76] which includes showing either that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong, or that the issues presented were "adequate to deserve encouragement to proceed further."[77]  After consideration of Reed's claims under this standard, I will issue a certificate of appealability only on Reed's claim—titled "4A" in his petition—that his counsel was ineffective under *Strickland* for failing to properly challenge juror misconduct.  I decline to issue a certificate of appeability on any other claim.

**Conclusion**

**IT IS THEREFORE ORDERED** that petitioner's Petition for Writ of Habeas Corpus **[ECF 7]** is **DENIED**.

**IT IS FURTHER ORDERED** that petitioner is granted a limited certificate of appealability for his ineffective-assistance-of-counsel claim based on his trial counsel's failure to challenge juror misconduct only.

The Clerk of Court is directed to **ENTER JUDGMENT ACCORDINGLY.**

Dated this 23rd day of November, 2015

_____
Jennifer A. Dorsey
United States District Judge

---

[76] *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000).

[77] *Id.* at 484.